**Sherrill HUFF, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

July 1, 1966.

As Modified on Denial of Rehearing Sept. 23, 1966.

Thomas B. Givhan, Charles W. Stratton, Givhan & Stratton, Shepherdsville, for appellant.

Robert Matthews, Atty. Gen., George F. Rabe, Asst. Atty. Gen., Frankfort, for appellee.

HILL, Judge.

This appeal questions the propriety of a judgment of conviction in two consolidated cases: one charging appellant with reckless driving (KRS 189.290), in which the court's conclusion and judgment fixed his penalty at $100; and the other charging the operation of a motor vehicle on a suspended operator's license (KRS 186.620), on which his fine was assessed at $10. Former jeopardy is the one and only argument presented for reversing both judgments.

Appellant was traveling south on I–65 about three miles north of Shepherdsville in Bullitt County when he observed through his rear-view mirror the state patrol cruiser operated by Officer Grossman passing other vehicles and about to catch up with him. Appellant had no operator's license, same having previously been revoked for speeding. Officer Grossman did not know of the revocation of appellant's operator's license, but appellant became fearful that the officer was pursuing him, so, he increased his speed to such an extent the officer's attention was attracted by his speed, whereupon, the officer gave chase, both increasing their speed all the while. During the chase, Officer Grossman radioed the State Police Barracks at Elizabethtown, and the latter got in touch with State Patrol Officer Feltner, who was in the vicinity of Bardstown. Feltner and Grossman made contact by radio at a time when Grossman was about midway between Lebanon Junction and Boston, where the contact was ostensibly broken by the wrecking of Grossman's cruiser. Appellant was not far ahead of Grossman when the wreck occurred as he observed the dust from the cruiser as it left the blacktop highway. Upon seeing the dust, appellant slowed down, momentarily, but did not say whether he slowed down to 90, 70 or 20 miles per hour. Being uncertain as to whether Grossman was still pursuing, he resumed a high rate of speed of about 100 miles per hour on to Boston, a distance of two miles, thence east on Ky. 62 in the direction of Bardstown. Appellant met Feltner about three and one-half miles east of Boston. Feltner recognized appellant, turned around, and gave chase a distance of two to two and one-half miles where appellant stopped on a side road.

■ Officer Feltner thereupon arrested appellant and wrote out and gave him two citations to appear in the Nelson County Court. One citation was for reckless driving; the other one for driving under a suspended operator's license. Officer Feltner returned appellant to the scene of Grossman's wreck, where Grossman wrote out two citations with charges identical to those made by Feltner to appear in one of the courts of Bullitt County. Feltner's citations showed the time of violations at 7:10 p.m., while Grossman's two citations showed the offenses to have been committed at 6:50 p.m. These citations were filed in the record but do not ascend to the dignity of competent evidence, and there was no testimony by anyone as to the correctness of the time fixed in the citations or the time of the chase.

Appellant entered pleas of guilty in Bullitt County and paid his fines there. He pleaded former jeopardy to the two charges in Nelson County.

Assuming Grossman was midway between Lebanon Junction and Boston when he wrecked, and further assuming that the radio contact between Grossman and Feltner was cut off at the time of the wreck (both of which are reasonable deductions), appellant traveled from four to four and one-quarter miles between the scene of the wreck and the place on Ky. 62 where he met Feltner. According to all the evidence, appellant consumed between three and four minutes traveling at the rate of near 100 miles per hour between the time Grossman was forced out of the chase and the time Feltner took it up.

■ It is our opinion that the acts and conduct of appellant constituted a continuing offense, and the fact part of his conduct

occurred in one county and part in another does not give jurisdiction to both counties. He could have been properly tried in either county but not in both. Cf. State v. Licari, 132 Conn. 220, 43 A.2d 450.

The facts of the present case show appellant operated his vehicle at a great rate of speed, in the neighborhood of 100 miles per hour, for about six miles. It was a continuous unlawful act and could not be split into separate offenses so as to justify the imposition of two penalties in each county.

We should hasten to emphasize here that we do not intend, by holding in this particular factual situation, to say that in no case may a person be prosecuted in two counties for traffic violations committed therein. Each case must be resolved on the facts of the particular case, and time may be an important factor in each case. For example, if appellant had traversed both Bullitt and Nelson counties the entire length of the two counties or for a substantial distance with opportunity to slow down or vary his speed, we think both counties as a unit for venue could have properly prosecuted such conduct. But, assuming appellant drove his automobile at the rate of 100 miles per hour continuously for a distance of only 1,000 feet crossing the dividing line between two counties, it would be unrealistic and unjust to permit courts of two jurisdictions to split the offense and impose two penalties for the same unlawful acts.

▮ It is true that, as we recently held in Commonwealth v. Devine, Ky., 396 S.W.2d 60 (1965), the constitutional guaranty against double jeopardy is inapplicable to cases not involving loss of life or liberty so that there is no constitutional inhibition against an appeal by the Commonwealth in such a case. This does not mean, however, that a second and separate prosecution for the same offense of which the defendant has been previously convicted or acquitted is permissible. That would amount to harassment and arbitrary treatment in violation of Section 2 of the Constitution of

Kentucky, and a conviction might well offend Section 17 of our Constitution, which prohibits cruel punishment. So, even if the plea of double jeopardy may have been technically inaccurate, it was sufficient to raise the constitutional question.

The judgment is reversed with directions that it be set aside and the appellant discharged.

MONTGOMERY, dissents.