STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. STEVEN ABLEMAN, DEFENDANT-APPELLANT.

Argued September 14, 1976—Decided January 13, 1977.

*Mr. Steven H. Gifis* argued the cause for appellant.

*Mr. Solomon Rosengarten,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

PER CURIAM. The judgment is affirmed substantially for the reasons expressed in the opinion of the Appellate Division.

PASHMAN, J., concurring in result. While I concur in the majority's affirmance of defendant's conviction, I disagree

with much of the reasoning in the Appellate Division's opinion, *State v. Ableman,* 134 *N. J. Super.* 517 (1975), adopted by the Court today.

Unlike the Appellate Division, I do not conclude that the term "same act" in *N. J. S. A.* 24:21–25[1] refers only to those acts expressly prohibited by Sections 19 through 22 of the statute. *Id.* at 520. *See State v. Krell* (Ableman), 125 *N. J. Super.* 457, 461 (Law Div. 1973). This interpretation accurately reflects the Court's approach to those provisions in the context of merger principles,[2] but it distorts the meaning of § 25. Under the Court's decisions construing the Controlled Dangerous Substances Act, *N. J. S. A.* 24:21–1 *et seq.,* each stage in a single, continuous transaction culminating in distribution of an illegal substance may be punished as a separate crime. *State v. Ruiz,* 68 *N. J.* 54, 58 (1975); *State v. Davis,* 68 *N. J.* 69, 78 (1975); *State v. Jester,* 68 *N. J.* 87, 90 (1975). I dissented in those cases because I could discern no explicit legislative intent authorizing conviction and punishment for the separate offenses of distribution and possession with intent to distribute when a single sale was involved. *State v. Ruiz, supra,* 68 *N. J.* at 59–69; *State v. Davis, supra,* 68 *N. J.* at 86–87; *State v. Jester, supra,* 68 *N. J.* at 92–93. *See also State v. Valen-*

---

[1]*N. J. S. A.* 24:21–25 provides in pertinent part:

In any case where a violation of this act is a violation of a Federal law or the law of another state, the conviction or acquittal under Federal law or the law of another state for the same act is a bar to prosecution in this State.

[2]The trial judge's interpretation of § 25 actually predated our decisions in *State v. Ruiz,* 68 *N. J.* 54 (1975), *State v. Davis,* 68 *N. J.* 69 (1975), and *State v. Jester,* 68 *N. J.* 87 (1975). He emphasized the captions reading "Prohibited Act" in finding that "same act" did not extend constitutional guarantees against double jeopardy to defendants prosecuted in other jurisdictions. *State v. Krell, supra,* 125 *N. J. Super.* at 461. In his view, § 25 only prevented reprosecution for precisely the same criminal act, as defined by the statute. The State appears to have taken a different view of § 25 on appeal. *See infra* at 148–149, Pashman, J., dissenting.

*tine,* 69 *N. J.* 205, 212–216 (1976). I argued that, absent a clear declaration of legislative policy, judicial construction of the statute should be guided by the fundamental principle that a person should not be punished twice for the same offense. *State v. Ruiz, supra,* 68 *N. J.* at 66. While the majority found the policies underlying the double jeopardy clause inapplicable to the problem of merger and the task of determining whether the Legislature meant to punish distribution and possession to distribute as separate offenses, *see State v. Davis, supra,* 68 *N. J.* at 80, these considerations bear directly on the interpretation of § 25. As the State concedes, this provision was intended to give double jeopardy protection to an individual who has been prosecuted in another jurisdiction for an act which is also illegal under our statute.[3]

Therefore, the Court must determine whether prosecution for distribution of hashish is barred under principles of double jeopardy, not whether distribution constitutes a different criminal act than possession with intent to distribute. The Appellate Division seemingly recognized this issue in pointing out that defendant's New Jersey prosecution after his conviction in federal court in New York would not be precluded under any of the various tests utilized to de-

---

[3]The analogous provision of the Uniform Narcotic Drug Law, *N. J. S. A.* 24:18–1 *et seq.* (repealed in large part by *L.* 1970, *c.* 226, § 47 and replaced by the Controlled Dangerous Substances Act, *L.* 1970, *c.* 226, § 1) was expressly described by the authors of the Uniform Narcotic Drug Act as "providing against double jeopardy." Uniform Narcotic Drug Act, 9 *U. L. A.* at 524, Commissioner's Prefatory Note. The Legislature no doubt incorporated the protection of the double jeopardy clause into this provision, and subsequently into *N. J. S. A.* 24:21–25, because it was aware of decisions holding that constitutional protection against reprosecution was not available in situations in which the section would be applicable. *See Bartkus v. Illinois,* 359 *U. S.* 121, 79 *S. Ct.* 676, 3 *L. Ed.* 2d 684, reh. den. 360 *U. S.* 907, 79 *S. Ct.* 1283, 3 *L. Ed.* 2d 1258 (1959) ; *Abbate v. United States,* 359 *U. S.* 187, 79 *S. Ct.* 666, 3 *L. Ed.* 2d 729 (1959) ; *State v. Cooper,* 54 *N. J.* 330 (1969), *cert.* den., 396 *U. S.* 1021, 90 *S. Ct.* 593, 24 *L. Ed.* 2d 514 (1970).

termine the applicability of double jeopardy. *Supra*, 134
*N. J. Super.* at 520.[4] On the facts of this case, I agree with
the Appellate Division's conclusion that this proceeding is
not violative of the ban on multiple prosecution. However,
I cannot agree that double jeopardy principles are coexten-
sive with the merger principles applied in the *Ruiz-Davis-
Jester* trilogy, and therefore would not rule out future con-
tentions by other defendants that § 25 encompasses more than
a particular criminal act prohibited by *N. J. S. A.* 24:21–19.

Initially, I note that the protection afforded by § 25
may be constitutionally compelled as well. The State argues
that the "dual sovereignty" rule established by *Bartkus v.
Illinois*, 359 *U. S.* 121, 79 *S. Ct.* 676, 3 *L. Ed.* 2d 684, *reh.*
den. 360 *U. S.* 907, 79 *S. Ct.* 1283, 3 *L. Ed.* 2d 1258 (1959)
and followed by this Court in *State v. Cooper*, 54 *N. J.*
330 (1969) makes § 25 the only obstacle to double prosecu-
tion for the same offense. Yet *Bartkus* may have been un-
dermined by the application of the double jeopardy clause
to the states in *Benton v. Maryland*, 395 *U. S.* 784, 89 *S. Ct.*
2056, 23 *L. Ed.* 2d 707 (1969). *Cf. Waller v. Florida*,

---

[4]Admittedly, the Appellate Division's opinion is ambiguous on this
point. It generally approved the trial court's interpretation of "same
act" as referring to the acts outlined in *N. J. S. A.* 24:21–19, yet
addressed defendant's double jeopardy argument. *Id.* The court ap-
parently read "same act" to incorporate double jeopardy standards,
and applied the Court's analysis in the *Ruiz-Davis-Jester* trilogy to
determine whether the second prosecution was barred. Although that
approach has the virtue of eliminating any discrepancy between the
definitions of "same act" as applied to multiple punishment for dif-
ferent elements of a single criminal transaction and "same act" as
applied to multiple prosecution for the same criminal episode, it re-
duces the scope of § 25 to trivial proportions. In my view, the prob-
lem of successive prosecutions for the same criminal transaction
requires *more* protection for defendants because of the greater risk
of harassment, erroneous or conflicting results, and multiple punish-
ment. *See* Note, "Twice in Jeopardy," 75 *Yale L. J.* 262, 277–292
(1965). This is reflected in the compulsory joinder rule set forth
in *State v. Gregory*, 66 *N. J.* 510 (1975). Therefore, I interpret
"same act" to encompass any act which would have been prosecuted
as part of the same criminal transaction in the first proceeding.

397 *U. S.* 387, 90 *S. Ct.* 1184, 25 *L. Ed.* 2d 435 (1970), *reh.* den. 398 *U. S.* 914, 90 *S. Ct.* 1684, 26 *L. Ed.* 2d 79 (1970). Furthermore, the dual sovereignty doctrine has been severely eroded in other contexts. *See Murphy v. Waterfront Commission,* 378 *U. S.* 52, 84 *S. Ct.* 1594, 12 *L. Ed.* 2d 678 (1964) (immunity statutes); *Elkins v. United States,* 364 *U. S.* 206, 80 *S. Ct.* 1437, 4 *L. Ed.* 2d 1669 (1969) (illegally seized evidence under the Fourth Amendment). In spite of the erosion of this doctrine, however, the traditional rule continues to be applied. *See United States v. Johnson,* 516 *F.* 2d 209, 211–212 (8 Cir. 1975), *cert.* den. 423 *U. S.* 859, 96 *S. Ct.* 112, 46 *L. Ed.* 2d 85 (1975); *United States v. Albowitz,* 380 *F. Supp.* 553, 554–555 (E. D. Pa. 1974).

Defendant's arguments would be more compelling if his participation in this illegal drug traffic had been confined to a single delivery of 50 pounds of hashish. If that were the case, then I would find a single offense and would bar the second prosecution for the reasons stated in my dissents to the *Ruiz-Davis-Jester* trilogy. *See ante* at 146–147 (Pashman, J., concurring). However, defendant's conduct went beyond this particular act of distribution. He had agreed to transport some 500 pounds to a buyer (later revealed to be a federal narcotics agent) from a larger cache of more than 1000 pounds of hashish stored in New York City. He conceded this fact in pleading guilty to the federal indictments for conspiring to possess and distribute and for possession with intent to distribute. In that proceeding, he admitted actual possession of 50 pounds of hashish and constructive possession of the balance. Although he acted as a courier on only one occasion, I cannot ignore these admissions as evidence of his involvement in a far greater web of criminal activity.

The question, then, becomes whether the second prosecution should be barred because the distribution charge was part of the same transaction for which he was convicted in federal court. Defendant argues on the basis of our decisions in *State v. Gregory,* 66 *N. J.* 510 (1975) and *State v. Currie,*

41 *N. J.* 531 (1964) that this charge should have been joined with the other charges in a single trial, or alternatively, that we should adopt a ruling precluding successive federal/state prosecutions when all charges are not included within the initial proceeding. Although I am sympathetic to the problems of dual prosecution, I do not find the cited decisions controlling on these facts. In *Gregory* we emphasized considerations of fairness to a defendant in exercising our rule-making powers to require joinder of charges arising from a single criminal episode. *Supra,* 66 *N. J.* at 519. However, we predicated that requirement upon the prosecutor's knowledge of all the charges and the availability of a forum with jurisdiction over all the charges. *Id. See State v. Currie, supra,* 41 *N. J.* at 539. In the case at bar, venue limitations prevented the federal court from having jurisdiction over the distribution count. *See* 18 *U. S. C. A.* § 3237; Wright, *Federal Practice and Procedure: Criminal,* § 303. *Cf. United States v. Malfi,* 264 *F.* 2d 147, 152 (3 Cir. 1959).[5]

Therefore, even under the "same transaction" test espoused by Justice Brennan in *Ashe v. Swenson,* 397 *U. S.* 436, 448–460, 90 *S. Ct.* 1189, 1196–1203, 25 *L. Ed.* 2d 469, 478–484 (1970) (concurring opinion), this prosecution

---

[5]Defendant argues that this was a "continuing offense" which falls within the first sentence of § 3237, and cites *United States v. Malfi, supra.* That case dealt with a New Jersey prosecution for distribution of narcotics where the arrangements for the transactions had been consummated in Pennsylvania. The defendant argued that the federal court did not have venue over the offense because the sale had occurred in Pennsylvania. In this instance, however, there was no suggestion that the crime of distribution occurred in New York; defendant's role in the sale was limited to the act of delivery, which was in New Jersey. Moreover, distribution is not a crime which fits within the class of offenses normally characterized as "continuing offenses." *See, e. g., United States v. Jackson,* 482 *F.* 2d 1167, 1178 (10 Cir. 1973), *cert.* den. 414 *U. S.* 1159, 94 *S. Ct.* 918, 39 *L. Ed.* 2d 111 (1974) (importation of heroin) ; *United States v. Lawson,* 507 *F.* 2d 433 (7 Cir. 1974), *cert.* den. 420 *U. S.* 1004, 95 *S. Ct.* 1446, 43 *L. Ed.* 2d 762 (1975) (importation of cocaine).

would be permissible. *Id.*, 397 *U. S.* at 453 n. 7, 90 *S. Ct.* at 1199, 25 *L. Ed.* 2d at 481.

Although I must admit that New Jersey's interest in vindicating its laws by sentencing this defendant to a custodial term of three months, in the wake of a prior federal disposition, is questionable,[6] I cannot conclude that it is so fundamentally unfair as to equal the prosecutors' actions in *Gregory* or *Currie*. A different case would be presented if the initial prosecution had been in New Jersey. Under those circumstances, where all the charges could be joined, I would not be hesitant to hold that § 25 forecloses a second prosecution by the State.

As I interpret our decision today, we hold that where a defendant involved in a large-scale operation of illegal drug traffic pleads guilty to possession with intent to distribute a great quantity of narcotics in a federal court located in a foreign state, *N. J. S. A.* 24:21–25 does not stand as a bar to a State prosecution for distribution of a portion of those narcotics. On this basis, I concur in the result.

PASHMAN, J., concurring in the result.

*For affirmance*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*For reversal*—None.

---

[6] At the time of the crime in question, defendant was 24 years old. He had graduated from college and worked as a teacher and counsellor in a mental health program. He had no prior record or history of drug abuse. This particular incident was apparently an aberrant event which reflected foolishness more than criminality. In light of these factors, the federal court's sentence of five years on probation with requirements of employment or schooling and therapy seems an appropriate disposition which does not call for subsequent prosecution.